UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS INGRASSIA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 4:11-CV-2033 (CEJ) |
| DARREN SHEETS, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendants for summary judgment. Plaintiff has filed a response in opposition to the motion, and the issues are fully briefed.

Plaintiff Thomas Ingrassia, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants used excessive force against him and were deliberately indifferent to his medical needs while he was a civilly-committed detainee in the Sex Offender Rehabilitation and Treatment Services (SORTS) facility operated by the Missouri Department of Mental Health. The defendants are Darren Sheets, David Easter, Gary Bennett, and Richard Watkins, all of whom were Security Aides at SORTS at the time of the incident alleged in the complaint.  The defendants are sued in their individual capacities, and plaintiff seeks monetary and declarative relief.

I.   **Background**

On March 1, 2011, defendants were assigned to escort plaintiff from SORTS to a doctor's appointment in Des Peres, Missouri. Prior to departure, plaintiff was placed in wrist and ankle restraints by defendant Sheets.  Because of plaintiff's status as a detainee and his history of escaping from confinement, the restraints were deemed a

necessary security precaution.[1]  According to the complaint, the trip to the doctor's office took approximately ninety minutes and the appointment itself lasted for approximately sixty minutes.  Plaintiff initially testified that he was kept in the restraints the entire time he was away from SORTS, but later stated that he could not be one-hundred percent sure. There is nothing in defendants' affidavits to indicate that the restraints were ever adjusted or removed prior to the return to SORTS.

Plaintiff testified that he experienced some right wrist discomfort on the trip to the medical office, which required him to constantly move the cuff around.  It is undisputed that plaintiff did not complain of any discomfort until after the appointment.

Plaintiff testified that while waiting for Easter to retrieve the vehicle for the return trip to SORTS, he told Sheets that the cuffs were too tight and that they were hurting him and causing his wrists to be numb. According to plaintiff, Bennett and Watkins were nearby when he made this complaint. Sheets checked the cuffs by placing one finger between the side of plaintiff's right wrist and the cuff. When Sheets stated that the cuffs were not too tight, plaintiff responded that the tightness was at the top and bottom of the cuff. Plaintiff's testified that he also complained to Easter when he returned with the vehicle, but Easter did not check plaintiff's cuffs at that time.

In their affidavits, the defendants state that they "observed [plaintiff] moving his handcuffs up and down his wrists and pulling on his handcuffs" on the drive back to SORTS.  Plaintiff testified that he again complained about the cuffs and Sheets again responded that they were not too tight.

---

[1] Plaintiff was committed to SORTS in 2001, after a jury determined that he was a sexually violent predator.  Later that year, plaintiff left the facility without permission and was not apprehended until 2008.

After plaintiff and defendants arrived at SORTS, Al Tripp, the supervising security officer came to inspect the handcuffs. According to defendants' affidavits, Mr. Tripp was able to fit one finger between the cuff and plaintiff's wrist. In addition, the defendants took photographs that show a finger inserted between plaintiff's right wrist and the handcuff and that show plaintiff's wrists after the cuffs were removed.

According to the medical records, there was some redness observed on plaintiff's wrists after he returned to SORTS, with increased redness on the right wrist. There were also some skin indentations, but no broken skin. Plaintiff testified that he was offered pain medication but refused it. Plaintiff testified that he experienced numbness and pain for more than a year after the incident. The SORTS records show that on March 2, 2011, plaintiff was observed doing physical exercises, including vertical upside down push-ups using both arms. Plaintiff acknowledged in his deposition that in the days and weeks following the incident he was able to write with his right hand, play basketball, and do push-ups, pull-ups, and parallel bar exercises. The SORTS records also show that plaintiff engaged in other physical activity using his right arm, including punching walls and fighting with other detainees.

II.   **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.   Discussion

In support of their motion for summary judgment, defendants argue that plaintiff cannot demonstrate that they used excessive force or were deliberately indifferent to his medical needs. Defendants argue, in the alternative, that they are entitled to qualified immunity because they did not violate plaintiff's clearly established rights.  For the reasons discussed below, the Court concludes that there is no genuine issue of disputed material fact with respect to plaintiff's claims and it is unnecessary to address the issue of qualified immunity.

#### A. Excessive Force

"[E]xcessive-force claims in the context of involuntarily committed state hospital patients" are "evaluated under the [Fourth Amendment's] objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees." Andrews v. Neer, 253 F.3d 1052, 1060-61 (8th Cir. 2001).  Thus, plaintiff's excessive force claim is to be analyzed under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989) ("Today we . . hold that *all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop or

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") "An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Chambers v. Pennycook, 641 F.3d 898, 905-06 (8th Cir. 2011) (quoting Graham, 490 U.S. at 396).

Plaintiff does not contend that he should not have been placed in restraints. Rather, his claim is that the restraints were unnecessarily applied too tightly, causing injury to his wrists. As discussed above, the only injuries plaintiff sustained as a result of being handcuffed were skin redness and indentation. While there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish a claim of excessive-force,[2] defendants correctly assert that "[f]or the application of handcuffs [in particular] to amount to excessive force, there must be something beyond minor injuries." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005) (citation omitted). This is because "'[h]andcuffing inevitably involves some use of force,' and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied." Chambers, 641 F.3d at 907 (quoting Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006)) (internal citations omitted).

The Court agrees with defendants that skin redness and indentation resulting from handcuffing do not qualify as "something beyond minor injuries." In Foster v. Metro Airports Comm'n., 914 F.2d 1076 (8th Cir. 1990), the court found that "nerve damage" from being handcuffed too tightly did not constitute actual injury without

---

[2]E.g., Lambert v. City of Dumas, 187 F.3d 931 (8th Cir. 1999) (holding that "[a] single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf" were sufficient to  support an excessive force claim).

"medical records indicating any long-term injury as a result of the handcuffs." Id. at 1082.  Affirming summary judgment, the court of appeals ruled that "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [insufficient] to support [a] claim of excessive force." Id.; see also Crumley v. St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) (finding that no reasonable jury could have found excessive force in applying handcuffs where plaintiff failed to allege or present any medical records indicating long-term or permanent physical injury).

Finally, plaintiff's rejection of pain medication, his ability to engage in strenuous physical activity using his wrists, and the absence of any medical evidence of serious injury belie his allegations of continuing pain and numbness.  The Court concludes that the evidence fails to establish that the defendants used excessive force.

### B. Deliberate Indifference

To establish a claim of deliberate indifference, a plaintiff must prove (1) an objectively serious medical need, and (2) that defendants knew of the need yet deliberately disregarded it. Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004). "To constitute an objectively serious medical need," the need alleged "must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995).  For the reasons discussed above, the evidence fails to establish the existence of a serious medical need.   However, even if a serious need could be established, the evidence fails to establish the defendants' disregard of it.

Upon learning of plaintiff's discomfort, defendant Sheets responded by inspecting the handcuffs.  Because he was able to insert his finger between the cuff and plaintiff's wrist, Sheets determined that the cuffs were not too tight. Mr. Tripp, the supervising security aide, also checked the handcuffs, using the same method utilized by Sheets. Plaintiff's disagreement with the technique used in checking his restraints

and the determination that they were not too tight does not create a genuine issue of material fact.  Further, the evidence establishes that plaintiff was evaluated by medical personnel upon his return to SORTS and was offered medication for his pain.  The evidence does not support a finding of deliberate indifference.

\* \* \* \*

The Court concludes that the defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion for summary judgment [Doc. # 26] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2013.